# UNITED STATES DISTRICT COURT
## DISTRICT OF SOUTH CAROLINA
## GREENVILLE DIVISION

| | | |
|---|---|---|
| The South Carolina Department of Health and Environmental Control, | ) | CIVIL ACTION NO. 6: 04 - 23349 - 13 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| American Fast Print Limited (U.S.) (d/b/a U.S. Finishing), Duke Energy Corporation (f/k/a Duke Power Company), and Piper Properties Of Greenville, LLC, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| American Fast Print Limited (U.S.) (d/b/a U.S. Finishing), | ) | |
| | ) | |
| Third-Party Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| Duke Energy Corporation and Piper Properties Of Greenville, LLC, | ) | |
| | ) | |
| Third-Party Defendants. | ) | |

## CONSENT DECREE

### The South Carolina Department of Health and Environmental Control and American Fast Print Limited (U.S.) (d/b/a U.S. Finishing); Duke Energy Corporation (d/b/a Duke Power); and Piper Properties of Greenville, LLC

## TABLE OF CONTENTS

I.       RECITALS ................................................................................................................... 2

II.      JURISDICTION ........................................................................................................... 6

III.     PARTIES ...................................................................................................................... 6

IV.      DEFINITIONS ............................................................................................................. 7

V.       NON-RESPONSIBLE PARTY VOLUNTARY CLEANUP CONTRACT AND CONSENT
         AGREEMENTS ........................................................................................................... 9

VI.      OBLIGATIONS OF THE PARTIES ......................................................................... 11

VII.     COVENANT NOT TO SUE AND RELEASE BY DHEC ........................................ 22

VIII.    COVENANT NOT TO SUE AND RELEASE BY SETTLING DEFENDANTS ...... 24

IX.      CONTRIBUTION PROTECTION ............................................................................ 24

X.       NOTICES AND SUBMISSIONS .............................................................................. 25

XI.      PUBLIC COMMENT ................................................................................................ 27

XII.     RETENTION OF JURISDICTION ........................................................................... 27

XIII.    IN THE EVENT OF FAILURE TO OBTAIN COURT APPROVAL ....................... 27

XIV.     INTEGRATION OF APPENDICES .......................................................................... 28

XV.      COUNTERPARTS ..................................................................................................... 28

XVI.     EFFECTIVE DATE .................................................................................................... 28

I.       FINAL JUDGMENT .................................................................................................. 33

## CONSENT DECREE

## INTRODUCTION

Plaintiff, the South Carolina Department of Health and Environmental Control

("Department" or "DHEC"), and American Fast Print Limited (U.S.) (d/b/a U.S. Finishing)

("American Fast Print"); Duke Energy Corporation (d/b/a Duke Power)("Duke Energy"); and

Piper Properties of Greenville, LLC ("Piper" or "Piper Properties") (American Fast Print,

Duke Energy, and Piper are referred to collectively as "Settling Defendants") have entered

into a settlement agreement, which they present to the Court in the form of this Consent

Decree. The intention of the Department and Settling Defendants (collectively "Settling

Parties") is to resolve in full any existing and future claims related to existing contamination

under the Comprehensive Environmental Response, Compensation, and Liability Act

("CERCLA"), 42 U.S.C. § 9601, et seq., as amended, and the South Carolina Hazardous

Waste Management Act ("SCHWMA"), S.C. Code Ann. §§ 44-56-10 to -840 (2002), relating

to 3335 Old Buncombe Road, Greenville, South Carolina, and surrounding areas impacted by

the migration of hazardous substances, pollutants, or contaminants ("the U.S. Finishing Site"

or "the Site"), including all claims for past, present and future response costs relating to

existing contamination and to protect the public health and welfare and the environment by

expediting the resolution of this matter and avoiding protracted, complex, and costly

litigation.

I.     RECITALS

      A.     On December 21, 2004, the Department filed a Complaint ("Complaint") in

this Court, against American Fast Print Limited (U.S.) (d/b/a U.S. Finishing) for CERCLA

and SCHWMA relating to the release and threatened release of hazardous substances at the U.S. Finishing Site.  On July 25, 2005, the Department filed an Amended Complaint against all of the Settling Defendants.  The Amended Complaint is attached as Appendix A to this Consent Decree.

B.     Defendant American Fast Print filed its Answer to Amended Complaint on August 19, 2005.  See Appendix B.

C.     Defendant Piper filed its Answer to Amended Complaint on August 29, 2005. See Appendix B.

D.     The Settling Parties refer to and incorporate herein by reference all facts, allegations and defenses set forth in all pleadings filed with the Court to date.

E.     The textile plant (the "Plant") located on the Site was one of the oldest operating textile facilities in the United States.  Various former owners and operators have conducted textile operations at the Site from 1902 until the Plant was partially destroyed by a fire in November 2003.

F.     American Fast Print currently owns the portion of the U.S. Finishing Site, as more particularly described in the CERCLA Lien attached hereto as Exhibit 2 (the "American Fast Print Property").  American Fast Print has owned and operated the Property from 1984 through the present.

G.     In July of 2004, Piper Properties purchased approximately nineteen (19) acres from Cone Mills Corporation ("Cone Mills") (the "Piper Properties Parcel").  The Piper Properties Parcel is located within the Site along the Reedy River.

**Consent Decree**
*DHEC v. American Fast Print Limited*
Civil Action No. 6 04 - 23349 - 13
Page 3

H.    Textile operations at the Site by some of the owners/operators have significantly contaminated the Property and the surrounding areas with hazardous substances as that term is defined in CERCLA.

I.    Duke Energy has owned and operated several transformers at the Property and leased a portion of the Property for many years to operate an electrical substation. American Fast Print and/or its predecessors have also operated several transformers at various locations on the Property.

J.    In 2004, DHEC conducted an inspection of the Site. In June and July of 2004, DHEC conducted Site reconnaissance activities and, in August of 2004, conducted Site sampling activities.

K.    DHEC's investigations found the following CERCLA hazardous substances at the U.S. Finishing Site: acenaphthene; aluminum; anthracene; arsenic; barium; benzo (a) anthracene; benzo (a) pyrene; benzo (b) fluoranthene; benzo (k) fluoranthene; beta-BHC; bis (2-ethylhexyl) phthalate; carbazole; chromium; chrysene; copper; dibenzo (a,h) anthracene; fluoranthene; indeno (1,2,3-cd) pyrene; lead; magnesium; manganese; mercury; nickel; Polychlorinated Biphenyls (PCBs); phenanthrene; pyrene; thallium; zinc; and 2-methylnaphthalene. App. A - Am. Compl, ¶ 45.

L.    Through June 27, 2006, the Department estimates its un-recovered response costs at the Site to be at least $442,058.19.

M.    DHEC has incurred, and continues to incur, direct and indirect response costs at the U.S. Finishing Site in the form of investigation, monitoring, surveying, testing, and gathering information to identify the existence and extent of the release, or threatened release,

Consent Decree
*DHEC v. American Fast Print Limited*
Civil Action No. 6 04 - 23349 - 13
Page 4

of hazardous substances, the sources and nature of the hazardous substances involved, and the extent of any danger to the public health or welfare or the environment, attorneys fees, and other response costs.

N.     This Consent Decree is intended to constitute a complete and final settlement of all of DHEC's past, present and future claims against Settling Defendants relating to the Existing Contamination at the U.S. Finishing Site, including all claims under CERCLA and SCHWMA.

O.     The Settling Parties agree that nothing in this Consent Decree constitutes an admission of any liability by Settling Defendants to the Department or any other person or entity relating to Matters Addressed or arising out of the transactions or occurrences alleged in the Complaint, Amended Complaint, Third Party Complaint, the Amended Third Party Complaint, Answers of any of the Settling Defendants, or in this Consent Decree.

P.     The Settling Parties recognize, and the Court finds by entering this Consent Decree, that this Consent Decree has been negotiated by the Settling Parties in good faith, and that implementation of this Consent Decree will expedite the cleanup of the U.S. Finishing Site, avoid protracted, complex and costly litigation among the Settling Parties, and resolve any existing and/or potential claims among them. The Settling Parties also recognize, and the Court also finds, that this Consent Decree is fair, reasonable, in the public interest, consistent with the National Contingency Plan (NCP), and is expected to address the objective of protecting public health, welfare and the environment.

Q.     Various factors were taken into account by the Settling Parties in negotiating the agreement reflected in this Consent Decree, including: (1) the Settling Defendants'

alleged share of responsibility for the conditions at the U.S. Finishing Site; (2) the risks and costs associated with the litigation of this case; and (3) other equitable factors.

R.      Upon judicial approval and entry of this Consent Decree, Settling Defendants shall be entitled to contribution protection as provided under CERCLA, applicable state law, and as set forth herein.

THEREFORE, with the consent of the Parties to this Decree, it is ORDERED, ADJUDGED and DECREED as follows:

II.      JURISDICTION

The Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1345 and Sections 107 and 113(b) of CERCLA, 42 U.S.C. §§ 9607 and 9613(b), and has personal jurisdiction over Settling Defendants. The Settling Parties consent to and shall not challenge the entry of this Consent Decree or the Court's jurisdiction to enter and enforce this Consent Decree.

III.      PARTIES

The agreement reflected in this Consent Decree is made by the Department and Settling Defendants, and shall apply to and be binding upon the Department and Settling Defendants and their successors, agents and assigns. Any change in ownership or corporate status of any of the Settling Defendants including, but not limited to, any transfer of assets or real or personal property, shall in no way alter such Settling Defendant's responsibilities under the Consent Decree. The terms of this Consent Decree are mutually enforceable by all signatories to this Consent Decree.

**Consent Decree**
*DHEC v. American Fast Print Limited*
Civil Action No. 6 04 - 23349 - 13
Page 6

IV.   <u>DEFINITIONS</u>

Unless otherwise expressly provided herein, terms used in this Consent Decree shall have the meaning assigned to them in CERCLA and the regulations promulgated under CERCLA. Whenever terms listed below are used in this Consent Decree or in any appendices attached hereto, the following definitions shall apply:

A.  "U.S. Finishing Site" or "the Site" shall mean the property located at 3335 Old Buncombe Road, Greenville, South Carolina and all surrounding areas impacted by the migration of hazardous substances, pollutants and contaminants;

B.  "CERCLA" shall mean the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. § 9601 to § 9675;

C.  "Consent Decree" shall mean this Consent Decree and all appendices and exhibits attached hereto. In the event of a conflict between this Consent Decree and any Appendix or Exhibit, the Consent Decree shall control;

D.  "DHEC" or the "Department" shall mean the South Carolina Department of Health and Environmental Control, its divisions, bureaus, units, sections, and any successor departments, agencies or instrumentalities of the State of South Carolina that may succeed to or be delegated its functions;

E.  "Effective Date" shall be the date that the Consent Decree enters into full force and effect by entry of this Court as provided in Section XVI of this Consent Decree;

F. "Existing Contamination" shall mean i) all hazardous substances, pollutants and contaminants at the Site known to the Department at the time of the execution of this Consent Decree and ii) any additional hazardous substances, pollutants and contaminants discovered by the Settling Parties through their compliance with the terms of this Consent Decree and that are present or existing on or under the Site as of the execution date of this Consent Decree.

G. "Future Response Costs" shall mean all future costs, including, but not limited to, direct and indirect costs that the Department may incur at or in connection with any response actions at the U.S. Finishing Site regarding Existing Contamination, beginning on the effective date of this Consent Decree as set forth in Section XVI herein; however, Oversight Costs as defined below are excluded from Future Response Costs;

H. "Matters Addressed" in this Consent Decree are all civil claims that the Department has or may have for all past, present and future response actions taken or that could be taken and civil actions for any response costs incurred or to be incurred relating to the Existing Contamination at the U.S. Finishing Site.

I. "Oversight Costs" shall mean oversight costs incurred by the Department pursuant to this Consent Decree after June 27, 2006, including, but not limited to, the direct and indirect costs of negotiating the terms of this Consent Agreement with Settling Defendants, public participation costs, reviewing work Plans and reports, and supervising corresponding work by Settling Defendants. Payments will be due within 30 days of receipt of the Department's invoice.

J.    "Past Response Costs" shall mean all costs, including, but not limited to, direct and indirect costs that the Department has incurred at or in connection with response actions at the U.S. Finishing Site, through June 27, 2006;

K.    "Pollution Control Act" or "PCA" shall mean the South Carolina Pollution Control Act, S.C. Code Ann. §§ 48-1-10 to 48-1-350 (Law Co-Op. 1987 & Supp. 2004);

L.    "SCHWMA" shall mean the South Carolina Hazardous Waste Management Act, S.C. Code Ann. § 44-56-10 to § 44-56-840 (Rev. 2002 & Supp. 2004); and,

M.    "South Carolina Hazardous Waste Contingency Fund" or "State Superfund" shall mean the Hazardous Waste Contingency Fund established under Title 44, Chapter 56, of the South Carolina Hazardous Waste Management Act, S.C. Code Ann. § 44-56-160 (2002);

## V. NON-RESPONSIBLE PARTY VOLUNTARY CLEANUP CONTRACT AND CONSENT AGREEMENTS

A.    The Settling Parties agree that future purchasers of the Property, or any portion of the Property, who meet the definition of Nonresponsible Party set forth in S.C. Code § 44-56-720(4) ("Future Purchasers"), will be eligible to enter into Non Responsible Party Voluntary Cleanup Contracts (NRP VCCs) with the Department, pursuant to S.C. Code Ann. 44-56-710 et seq., if Future Purchasers meet all applicable statutory criteria, including without limitation the demonstrated financial viability to meet the obligations of the NRP VCC required pursuant to S.C. Code § 44-56-730(C).

B.     The Settling Parties agree and understand that Future Purchasers of the Property, or any portion of the Property, may agree with one or more of the Settling Defendants to perform some or all of Settling Defendants' obligations under this Consent Decree, but such agreement shall not, in any way, relieve Settling Defendants of their obligations to perform under this Consent Decree, unless and until such Future Purchasers enter into a separate, binding consent agreement with the Department whereby such Future Purchasers agree to perform obligations specified in this Consent Decree.  Settling Defendants shall be relieved of only those obligations expressly assumed by a Future Purchaser pursuant to a consent agreement specifically enforceable by the Department ("Future Purchaser Consent Agreement").  The Department shall have the right to require any Future Purchaser to demonstrate financial viability to meet the obligations of a Future Purchaser Consent Agreement.

C.     The provisions of any NRP VCC or Future Purchaser Consent Agreement shall be the provisions then customarily required by the Department including without limitation the Department's covenant not to sue for Existing Contamination upon successful completion.  The Department agrees that under either a NRP VCC or Future Purchaser Consent Agreement, Future Purchasers shall not be required to contribute to Past Response Costs (except to the extent that a bona fide prospective purchaser windfall lien applies under 42 U.S.C. § 9607(r) and S.C. Code § 44-56-200(B)(1)) but will be required to pay any customary Oversight Costs related to its NRP VCC or Future Purchaser Consent Agreement.  The Department further agrees that under either a NRP VCC or Future Purchaser Consent Agreement, Future Purchasers shall not be

required to perform assessment or remediation work except if one or more of the following conditions apply: 1) work required under this Consent Decree which is expressly assumed by a Future Purchaser under a Future Purchaser Consent Agreement; 2) if required to ensure that the purchaser's intended reuse of the property is safe and appropriate with respect to human health and the environment; 3) if purchaser intends to use the property in a manner not consistent with the use assumptions contained in the Record of Decision or any restrictive covenants, use restrictions or institutional controls placed on the property pursuant to the Record of Decision; and 4) if the Department determines, in its sole judgment, that further assessment or response actions are necessary as a result of the removal of any existing structures on the Property.

D.      The provisions of this Section V do not apply to any NRPVCC or Future Purchaser Consent Agreement for property owned by a Settling Defendant that is not in compliance with this Consent Decree.


VI.    OBLIGATIONS OF THE PARTIES

NOW THEREFORE, in consideration of the agreements, covenants and conditions contained herein, the receipt and sufficiency of which are hereby acknowledged, the Settling Parties agree to settle the Lawsuit as follows:

A.      **Cash Payments.**  Within ten (10) days from the date the Court approves this Consent Decree, the Settling Defendants individually agree to pay to DHEC the following sums for reimbursement of the Department's Past Response Costs:

**American Fast Print: $200,000.00**

**Consent Decree**
*DHEC v. American Fast Print Limited*
Civil Action No. 6 04 - 23349 - 13
Page 11

**Duke Energy: $150,000.00**

**Piper: $22,100.00**

The obligations contained within this Paragraph are to be performed severally and not jointly by the Settling Defendants. Payment will be made by check payable to the South Carolina Department of Health and Environmental Control and directed to Director of Division of Site Assessment and Remediation, Bureau of Land and Waste Management, S.C.D.H.E.C., 2600 Bull Street, Columbia, SC 29201.

B.   **Removal Action.** Duke Energy shall assess, remove and properly dispose of any and all PCBs at the Site.  Duke Energy shall conduct the work in accordance with the attached Scope of Work, Exhibit 1, and the following:

1. Within 30 days of execution of this Consent Decree by all parties, Duke Energy shall submit the following documents to the Department for review and approval:  1) a modified Work Plan that includes a description of and a proposed schedule for all activities to be performed as part of this removal action, 2) a Sampling Quality Assurance Project Plan (QAPP), and 3) a Health and Safety Plan that complies with applicable Occupational Safety and Health Administration (OSHA) regulations found at 29 CFR Part 1910.120.  The Department agrees to provide timely review of these documents submitted by Duke Energy.  Duke Energy may proceed on an expedited basis and bear the risk that the Consent Decree is not finally approved.  Duke Energy agrees to prepare all reports and perform all steps as outlined in the modified Work Plan as approved by the Department.  Duke Energy shall notify the Department at least 5 days in advance of the start of any field activities.

2. Duke Energy shall submit written monthly progress reports to the Department concerning actions undertaken pursuant to this Consent Decree by the 5th day of each month following the Department's approval of the modified Work Plan until the Department determines that the removal action is complete, or as otherwise directed by the Department.  These monthly reports shall describe all significant developments during the preceding month, including actions performed, problems encountered, and analytical data received, and a schedule of upcoming activities.

3. Within 45 days of the completion of removal activities required under this Consent Decree, Duke Energy shall submit to the Department for review and approval a final report summarizing the actions taken to comply with this Consent Decree.  This report shall include a presentation of all analytical results, a listing of quantities and types of material removed, a listing of

disposal destinations, manifests, disposal approval letters, an estimate of the total cost of the removal action, and any other relevant documentation generated during the removal action.

4. All removal activities shall be performed in a manner consistent with the National Oil and Hazardous Substances Contingency Plan (NCP) found at 40 CFR Part 300.400. Duke Energy shall comply with the "Offsite Rule" (40 CFR Part 300. 440) for all hazardous substances, pollutants, or contaminants removed offsite pursuant to this Consent Decree.

C.     **Performance of Remedial Action.**  The Settling Defendants agree to assume all future obligations for remedial action (as that term is defined in CERCLA § 9601(24)) at the Site, including completion of the remedial investigation (RI), feasibility study (FS), and performance of the remedy to be selected by DHEC at the Site, as set forth below, consistent with the technical intent of the National Contingency Plan (NCP).  These obligations as outlined herein and in the attached Scope of Work, Ex. 1, are to be performed severally and not jointly by Settling Parties; however, each of the Settling Parties agrees to use best efforts to work cooperatively with one another to achieve the remedial actions required under this Consent Agreement.

1. Remedial Investigation (RI)

a. Within thirty (30) days following court approval of this Agreement, American Fast Print and Piper Properties shall each submit to DHEC for review and approval, a Remedial Investigation/Feasibility Study Work Plan ("Work Plan") for the Site that shall be consistent with the Scope of Work. A Health and Safety Plan that is consistent with the Occupational Safety and Health Act (OSHA) regulations and protocols and a Quality Assurance Project Plan (QAPP) must also be prepared and submitted to DHEC. Each plan may be prepared by American Fast Print and Piper Properties under separate cover. Each Work Plan shall include the Scope of Work attached as Ex. 1. Each Work Plan shall include a time schedule for implementation of all major activities required by the Work Plan to comply with time schedules incorporated herein. Each Work Plan must include, but is not limited to, provisions for the following: determining the sources(s), nature, and extent of contamination, including an assessment of groundwater; evaluating risks (Baseline Risk Assessment) to human health and the environment; and, evaluating remedial alternatives (Feasibility Study).

b. Within a reasonable time after receipt of the Work Plans, the Department will meet with American Fast Print and Piper Properties to review the Work Plans and any comments on the Work Plans and the time schedule for implementation thereof. Within a reasonable amount of time after the meeting, the Department will send American Fast Print and Piper Properties written comments on their respective Work Plan, if any. The Department reserves the right to send the written comments prior to the meeting.

c. Within fifteen (15) days after receipt of written comments on the Work Plans from DHEC, American Fast Print and Piper Properties shall respond to DHEC's written comments in writing.

d. Upon DHEC approval of the Work Plan, the Work Plan and schedule shall be incorporated herein and become an enforceable portion of this Agreement.

e. The Scope of Work attached as Ex. 1 sets forth work to be included in the Work Plans and to be performed by American Fast Print and Piper Properties. American Fast Print and Piper Properties each agree that they will be wholly responsible for the remedial work contained in the attached Scope of Work and in this Consent Decree, as follows:

   i. Piper Properties shall be responsible for the portion of the remedial work related to the Piper Properties Parcel; and,

   ii. American Fast Print shall be responsible for all other remedial work related to the Site, except for the Remedial or Removal work allocated to Piper Properties or Duke Energy.

f. American Fast Print and Piper Properties shall begin implementation of the Work Plans within thirty (30) days of receipt by American Fast Print and Piper Properties of DHEC's written approval of the Work Plans.

g. American Fast Print and Piper Properties shall each submit a Remedial Investigation (RI) Report to include the Baseline Risk Assessment (BRA) within thirty (30) days of completion of the work set forth in the Work Plan. The RI Report submitted by American Fast Print must include a proposal for monitoring groundwater until a final remedy is implemented, or until DHEC

determines that monitoring is no longer necessary. DHEC shall review the report for determination of completion of the RI and sufficiency of the documentation within a reasonable period of time.

h. Within a reasonable time after receipt of the RI and BRA Reports, the Department shall meet with American Fast Print and Piper Properties to review and discuss comments on the RI and BRA Report.

i. If DHEC determines that either of the field investigations is not complete, American Fast Print and Piper Properties shall conduct additional field investigations to further determine the source, nature, and extent of contamination and submit a revised Report. Alternatively, if the field investigation is determined complete by DHEC, but the report, as submitted by American Fast Print and/or Piper Properties is not approved, American Fast Print and/or Piper Properties shall, within fifteen (15) days, submit a revised report, which addresses the comments from DHEC.

2. Feasibility Study (FS)

a. Within forty-five (45) days from approval of the RI Report, American Fast Print and Piper Properties shall each submit a Feasibility Study (FS) which evaluates alternatives for remedial action. American Fast Print and Piper Properties shall use reasonable efforts to submit one comprehensive Feasibility Study to the Department, but may submit individual Feasibility Studies if they are unable, after using reasonable efforts, to agree upon one comprehensive Feasibility Study.

b. American Fast Print and Piper Properties agree to work on the FS as follows:
i. Piper agrees to work on and be responsible for the portion of the Feasibility Study related to Piper Properties Parcel; and,

ii. American Fast Print agrees to work on and be responsible for all other portions of the Feasibility Study related to the Site.

c. Within a reasonable amount of time after receiving the Feasibility Study, DHEC shall meet with American Fast Print and Piper Properties to review and discuss comments on the FS Report.

d. Within thirty (30) days of the meeting with DHEC on the FS

Report, American Fast Print and Piper Properties shall submit a finalized FS Report that addresses DHEC comments.

   e.   Within a reasonable amount of time, DHEC shall review for approval the FS Report.

3.   Interim Remedial or Removal Actions:   DHEC will consider interim remedial or removal Actions where appropriate.   American Fast Print and Piper Properties agree to conduct interim remedial or removal actions where determined necessary and appropriate by DHEC.

4.   Record of Decision (ROD)

   a.   Within a reasonable amount of time after the final approval of the FS, DHEC shall issue its Proposed Plan for remedial action and provide a thirty-day public comment period on the Proposed Plan. Within a reasonable amount of time following the close of the public comment period, DHEC shall issue the Record of Decision (hereinafter "ROD") specifying the selected remedy or remedies for the Site.

   b.   American Fast Print and Piper Properties agree to perform remedies as follows:

      i.   Piper agrees to perform remedies with respect to Piper Properties Parcel; and,

      ii. American Fast Print agrees to perform all other remedies at the Site.

   c. American Fast Print and Piper Properties shall have the right to seek judicial review of the ROD within thirty (30) days of DHEC's issuance of the ROD.

   d. Within thirty (30) days of issuance of the ROD or, if judicial review is sought as set forth above, within thirty (30) days of a judicial determination, American Fast Print and Piper Properties shall each submit to DHEC, for approval, a Remedial Design/Remedial Action (hereinafter "RD/RA") Work Plan, including a schedule of implementation in accordance with Paragraph 4(b) above. Any comments generated through DHEC's review of the RD/RA Work Plans must be addressed in writing by American Fast Print and Piper Properties within thirty (30) days of receipt of said comments by American Fast Print and Piper Properties. Upon DHEC

approval of each Work Plan and the time schedule for implementation thereof, each Work Plan and schedule shall be incorporated herein and become an enforceable part of this Agreement.

e.    Further, upon approval of the RD/RA Work Plan, American Fast Print and Piper Properties shall each submit a Remedial Design to DHEC in accordance with the schedule established in their approved RD/RA Work Plan.    Any comments generated through DHEC's review of the Remedial Design must be addressed in writing by American Fast Print and/or Piper Properties within thirty (30) days of receipt of said comments by American Fast Print and Piper Properties. Upon DHEC approval of the Remedial Design and the time schedule for implementation thereof, the Remedial Design(s) and schedule(s) shall be incorporated herein and become an enforceable part of this Agreement.  American Fast Print and Piper Properties shall each begin to implement the remedy, in accordance with Paragraph 4(b) herein, within thirty (30) days of DHEC's approval of the Remedial Design and thereafter take all necessary and reasonable steps to ensure timely completion of the remedy.

f.    American Fast Print and Piper Properties shall each submit to DHEC a written monthly progress report within thirty (30) days of initiation of the RI/FS Work Plan and once every month thereafter until completion of the work required under this Agreement.    The monthly progress report shall include the following:  (a) a description of the actions which American Fast Print and Piper Properties have taken toward achieving compliance with this Agreement during the previous month;  (b) results of sampling and tests, in summary format received by American Fast Print and Piper Properties during the reporting period; (c)  description of all actions which are scheduled for the next month to achieve compliance with this Agreement, and  other information relating to the progress of the work as deemed necessary or requested by DHEC; and (d) information regarding the percentage of work completed, any delays, encountered or anticipated, that may affect the future schedule for implementation of the Work Plan, and a description of efforts made to mitigate delays or avoid anticipated delays.

g.    American Fast Print and Piper Properties shall each prepare all plans and perform all activities under this Agreement in accordance with the technical intent of the National Contingency Plan and applicable EPA guidance. Three (3) copies of each document prepared under this Agreement shall be submitted to DHEC's project manager.

h.     American Fast Print and Piper Properties shall each notify DHEC in writing at least five (5) days before the scheduled date if any event occurs which causes or may cause a delay in meeting any of the above-scheduled dates for completion of any specified activity pursuant to this Agreement.  American Fast Print and Piper Properties shall describe in detail the anticipated length of the delay, the precise cause or causes of delay, if ascertainable, the measures taken or to be taken to prevent or minimize the delay, and the timetable by which American Fast Print and Piper Properties propose that those measures will be implemented.  DHEC shall provide written notice to American Fast Print and/or Piper Properties as soon as practicable that a specific extension of time has been granted or that no extension has been granted.  An extension shall be granted for any scheduled activity delayed by an event of *force majeure* which shall mean any event arising from causes beyond the control of American Fast Print and/or Piper Properties that causes a delay in or prevents the performance of any of the conditions under this Agreement including, but not limited to:  a)  acts of God, fire, war, insurrection, civil disturbance, explosion; b)  adverse weather conditions that could not be reasonably anticipated causing unusual delay in transportation and/or field work activities;  c) restraint by court order or order of public authority;  d)  inability to obtain, after exercise of reasonable diligence and timely submittal of all required applications, any necessary authorizations, approvals, permits, or licenses due to action or inaction of any governmental agency or authority;  and e)  delays caused by compliance with applicable statutes or regulations governing contracting, procurement or acquisition procedures, despite the exercise of reasonable diligence by American Fast Print and/or Piper Properties.  Events which are not *force majeure* include by example, but are not limited to, unanticipated or increased costs of performance, changed economic circumstances, normal precipitation events, or failure by American Fast Print and/or Piper Properties to exercise due diligence in obtaining governmental permits or performing any other requirement of this Agreement or any procedure necessary to provide performance pursuant to the provisions of this Agreement.   Any extension shall be granted at the sole discretion of DHEC, incorporated by reference as an enforceable part of this Agreement, and, thereafter, be referred to as an exhibit to the Agreement.

i. American Fast Print and Piper Properties shall comply with any time schedule in the approved Work Plans or any extension approved by DHEC.  Failure to comply with any time schedule may be considered a violation of the provisions of this Agreement, and, therefore, may be

deemed a violation of the South Carolina Hazardous Waste Management Act and the Pollution Control Act, as provided for in the final paragraph of this Agreement.

j. DHEC, its agents and employees, will not be denied access to the Site by American Fast Print and/or Piper Properties during normal business hours or at any time work under this Agreement is being performed or during any environmental emergency or imminent threat situation, as determined by DHEC (or as allowed by applicable law).

k. Failure by American Fast Print and/or Piper Properties to comply with any schedule in any approved Work Plan (or any extension approved by the Department) may be considered a violation of the provisions of this Consent Decree and therefore may be deemed a violation of the SCHWMA and the PCA as provided for in the final paragraph of this Consent Decree.

5. As provided by the SCHWMA, each Settling Defendant shall, on a quarterly basis, reimburse the Department for Oversight Costs for its respective portion of work performed in accordance with Paragraph 4(b) herein incurred by the Department pursuant to this Consent Decree.

D.    First Priority Lien.

1.    American Fast Print and Piper shall each give a first priority CERCLA lien to the Department on their respective properties for the full amount of all Future Response Costs incurred and to be incurred by the Department at the Site on their respective properties excluding Future Response Costs related to PCBs. The Notice of CERCLA Lien for American Fast Print and for Piper is set forth in Ex. 2.

2.    American Fast Print shall provide the Department with a Subordination of Mortgage from any and all holders of liens or encumbrances on the American Fast Print Property. Piper shall provide the Department with a Subordination of Mortgage from any and all holders of liens or encumbrances on the Piper Properties Parcel.

3.    American Fast Print and Piper shall pay all taxes, assessments and other charges, fines and impositions attributable to their respective properties, which may attain a priority over the Department's CERCLA first priority lien.

4.          The Department shall make no efforts to collect on the first priority CERCLA liens until or unless American Fast Print or Piper is in default as set forth herein.  If American Fast Print or Piper is in default under this Agreement, the Department has the right to foreclose its lien with respect to the defaulting party's property, appoint a receiver for the sale of such property, or take other action to protect its security interest.

5.          American Fast Print may sell the American Fast Print Property, or any portion of the Property.  American Fast Print shall make all efforts to sell the American Fast Print Property, or any portion of the Property, at fair market value.  Piper Properties may sell the Piper Properties Parcel, or any portion of such parcel.  Piper shall make all efforts to sell the Piper Properties Parcel, or any portion of such parcel, at fair market value.  Subject to the provisions of paragraph 6 below, the Department will release its lien to permit American Fast Print to sell all or a portion of the American Fast Print Property.  To the extent that Piper Properties desires to sell all or a portion of the Piper Properties parcel before all of its obligations under this Consent Decree are complete, then Piper Properties agrees to escrow the net proceeds of such sale in substantially the same manner that American Fast Print has agreed to escrow funds pursuant to paragraph 6 below and the Escrow Agreement attached as Ex. 3 to this Consent Decree.

6.          Net sales proceeds from any sale of the American Fast Print Property shall be placed into an escrow account to be used solely for fulfilling American Fast Print's obligations as set forth in Section VI of this Agreement.  Within ten (10) days of Court approval of this Consent Decree, proceeds remaining from the previous sale of American Fast Print Property shall be placed in the escrow account in the amount of $245,000.00 (less expenses within the expense categories identified on Exhibit 4 paid after July 1, 2006, as demonstrated by an internal accounting provided to the Department at the time of deposit).  The Escrow Agreement is attached as Ex. 3.  All requests for withdrawals from this escrow account by American Fast Print must be approved by the Department in writing prior to the withdrawal.  DHEC acknowledges that American Fast Print will request approval for payment of its operating costs, including salaries and other expenses as set forth in Ex. 4, such approval not to be unreasonably withheld.

After receiving a written certification from the Department that American Fast Print's obligations have been satisfied and the remedy is complete, any remaining funds shall be disbursed American Fast Print or its successor. In addition, if requested by American Fast Print, the Department shall re-evaluate the amount needed to be held in escrow to complete the remedial work to be performed by American Fast Print as provided herein and, in the Department's sole discretion, the Department may disburse any overage amount. Also, all funds shall be disbursed from the escrow to American Fast Print in the event the obligations of American Fast Print are performed or assumed by purchasers pursuant Future Purchaser Consent Agreement(s).

E.    <u>Access</u>.

1.    American Fast Print and Piper Properties each grant DHEC and its designees access for the purpose of conducting any activity under this Consent Agreement.

2.    The Department acknowledges that Settling Parties do not own the entire Site and cannot guarantee access thereto. To the extent a Settling Party is required to work on a portion of the Site not owned by the Settling Party, such Settling Party shall make reasonable efforts to gain access to the property that it needs to enter to perform necessary work under this Consent Decree. Such efforts shall include, but not be limited to, written requests to the property owner(s) requesting access, describing activity for which access is requested, and giving a commitment to return the property to the condition it was in prior to entry. In the event that the Settling Party is not able to gain access to any property to perform necessary work under any approved Work Plan after making reasonable efforts to do so, the Department will take reasonable steps to assist the Settling Party in obtaining access. In the event that Settling Party is still unable to obtain access, the Department will perform the work necessary under this Consent Decree using a contractor selected by the Department. In the event that the Department performs the work, Settling Parties agree that the Settling Party who was required to perform the work will reimburse the Department for all costs associated with the Department's performance of the work.

F.    <u>Expedited Work</u>. One or more of the Settling Defendants may be willing to proceed and bear the risk that the Consent Decree is not

finally approved. The Department agrees to treat the Northern Reservoir and the Northwestern Reservoir as separate units in order to allow expedited treatment. A work plan for any further investigation to be undertaken as contemplated by the Scope of Work, Exhibit 1, will be submitted to the Department within ten (10) days of the signing of this Consent Decree and DHEC agrees to use best efforts to respond to the work plan in twenty (20) business days. Any investigation will be completed and reported to the Department within twenty (20) days following the Department's approval of the work plan. American Fast Print may submit a proposed determination of remedial action or deed restrictions for the two reservoirs in writing to the Department but any such proposed determination shall not be included in the report of investigation. AFP and the Department agree to work toward an evaluation of interim remedial or removal actions within thirty (30) business days of the date of the filing with the Department. To the extent that the expedited work at the Northern Reservoir involves PCB contamination, Duke Energy agrees to cooperate with American Fast Print in expediting the work.

G.      So long as the Settling Defendants are in compliance with the terms of this Consent Decree, the Department agrees to notify the United States Environmental Protection Agency ("EPA") that the Department does not believe that it is necessary for EPA to conduct a removal or remedial action at the Site at this time.

## VII.    COVENANT NOT TO SUE AND RELEASE BY DHEC

A.      Except as specifically provided in Sections VII.C. and VII.D of this Consent Decree, the Department covenants not to sue, take administrative or any other action against Settling Defendants and their past, present, and future officers, directors, predecessors, successors, affiliates, subsidiaries, and assigns pursuant to CERCLA and SCHWMA with regard to Existing Contamination at the U.S. Finishing Site, and hereby releases Settling Defendants and their past, present, and future officers, directors, predecessors, successors, affiliates, subsidiaries, and assigns from any claims that DHEC may have asserted in this action against Settling Defendants for response costs relating to Existing Contamination at

**Consent Decree**
*DHEC v. American Fast Print Limited*
Civil Action No. 6 04 - 23349 - 13
Page 22

the U.S. Finishing Site. This Covenant Not to Sue and Release is conditioned upon the satisfactory performance by Settling Defendants of their obligations under Section VI of this Consent Decree.

      B.     The Covenant Not to Sue and Release by the Department set forth in Section VII.A. of this Consent Decree shall take effect as to Settling Defendants upon entry of this Consent Decree, the payment in full by Settling Defendants of the sum set forth in Section VI.A. of this Consent Decree, and the completion of the remedy as set forth in Section VI.

      C.     Nothing in this Consent Decree, including the Covenant Not to Sue and Release, shall preclude the initiation by DHEC of:

           1.     an action against Settling Defendants to enforce compliance with the terms of this Consent Decree; or

           2.     an action against Settling Defendants based on criminal liability.

      D.     The Covenant Not to Sue and Release by the Department extends only to Settling Defendants and their officers, directors, predecessors, successors, affiliates, subsidiaries, and assigns and does not extend to any other person. The Covenant Not to Sue and Release set forth in Section VII.A. does not pertain to any matters other than those expressly specified in this Consent Decree. The Department reserves, and this Consent Decree is without prejudice to, all rights against Settling Defendants with respect to all other matters.

      F.     Nothing in this Consent Decree shall constitute or be construed as a release, contribution protection or a covenant not to sue regarding any claim or cause of action

**Consent Decree**
*DHEC v. American Fast Print Limited*
Civil Action No. 6 04 - 23349 - 13
Page 23

against any entity other than Settling Defendants and their officers, directors, predecessors, successors, affiliates, subsidiaries, and assigns.

VIII.    COVENANT NOT TO SUE AND RELEASE BY SETTLING DEFENDANTS

A.    In consideration of DHEC's Covenant Not to Sue and Release, set forth in Section VII of this Consent Decree, Settling Defendants covenant not to sue and agree not to assert any claims or causes of action against DHEC, or its attorneys, contractors or employees, for reimbursement from the South Carolina Hazardous Waste Contingency Fund; or any claims arising out of the selection or performance of response actions at or in connection with the U.S. Finishing Site except as set forth in Section VI(B)(4)(C), including any claims under the South Carolina Constitution or at common law, and hereby release DHEC, its attorneys, contractors, and employees from any claims or causes of action that Settling Defendants could have asserted in this action against DHEC for costs, damages, or any other relief regarding the U.S. Finishing Site.

IX.    CONTRIBUTION PROTECTION

The Settling Parties agree, and by entering this Consent Decree the Court finds, that upon approval of this Consent Decree by the Court and the performance of Settling Defendants' obligations set forth in Section VI of this Consent Decree, Settling Defendants and their officers, directors, predecessors, successors, affiliates, subsidiaries, and assigns shall not be liable to each other or any other person or entity for contribution claims relating to the Matters Addressed herein of whatever kind or nature, and are entitled, as of the execution date of this Consent Decree by the Court, to protection from contribution actions or claims as provided in CERCLA Section 113(f)(2), 42 U.S.C. § 9613(f)(2), SCHWMA S.C.

**Consent Decree**
*DHEC v. American Fast Print Limited*
Civil Action No. 6 04 - 23349 - 13
Page 24

Code Ann. § 44-56-200, in connection with the U.S. Finishing Site. This contribution protection does not extend to claims that the United States of America or any of its departments or agencies has or may have against Settling Defendants.

X.    NOTICES AND SUBMISSIONS

     A.     Whenever, under the terms of this Consent Decree, notice is required to be given or a document is required to be sent by one Party to another, it shall be directed to the individuals at the addresses specified below, unless those individuals or their successors give notice of a change to the other Settling Parties in writing. When notification to or communication with DHEC or Settling Defendants is required by the terms of this Consent Decree, it shall be in writing, postage prepaid, and sent by certified mail, return receipt requested, hand delivered, or by an overnight delivery service, and addressed as follows:

As to the South Carolina Department of Health and Environmental Control:

     J. Keith Lindler, Director
     Site Assessment and Remediation Division
     Bureau of Land and Waste Management
     South Carolina Department of Health & Environmental Control
     2600 Bull Street
     Columbia, South Carolina 29201

     Jacquelyn S. Dickman, Esquire
     Office of General Counsel
     South Carolina Department of Health & Environmental Control
     2600 Bull Street
     Columbia, South Carolina 29201

As to American Fast Print, Ltd. (U.S.):

     Mr. Pete Bednar
     PO Box 5765
     Spartanburg, South Carolina  29304

     Richard Kelly, Esquire

Leatherwood Walker Todd & Mann, P.C.
PO Box 87
Greenville, South Carolina  29602

As to Duke Energy Corporation:

Garry S. Rice, Esquire
Duke Energy Corporation
(d.b.a. Duke Energy Corporation)
526 South Church Street
Charlotte, North Carolina  28202-1904

Mr. Ralph C. Roberts
PO Box 1006
Charlotte, North Carolina  29201-1006

R. Howard Grubbs, Esquire
Michael J. Bogle, Esquire
Womble Carlyle Sandridge & Rice, PLLC
550 S. Main Street, Suite 400
P.O. Box 10208
Greenville, South Carolina  29603

As to Piper Properties of Greenville, LLC:

Mr. James Durham
Piper Properties of Greenville, LLC
501 Furman Road
Suite A
Greenville, South Carolina  29609

Jack D. Griffeth, Esquire
Ross B. Plyler, Esquire
Love Thornton Arnold & Thomason
PO Box 10045
Greenville, South Carolina  29603

B.      Each of the Settling Parties may unilaterally change the person designated to receive notice on its behalf by providing written notice of the change to the other Settling Parties no later than ten (10) days prior to the time that the change is to take effect.

XI. PUBLIC COMMENT

Consistent with CERCLA section 122(d), 42 U.S.C. § 9622 (d), this Consent Decree shall be subject to a thirty (30)-day public comment period before it is entered into force as a Consent Decree by the Court.  DHEC reserves its rights to withdraw from this Consent Decree if the comments regarding the Consent Decree disclose facts that indicate that this Consent Decree is not protective of the public health, welfare or the environment, inappropriate, improper or inadequate.  Settling Defendants consent to the entry of this Consent Decree without further notice.

XII. RETENTION OF JURISDICTION

The Court shall retain jurisdiction, and no other court shall have jurisdiction, over both the subject matter of, and the Settling Parties to, this action for the purpose of issuing such further orders or directions as may be necessary or appropriate to construe, implement or enforce the terms of this Consent Decree.

XIII.      IN THE EVENT OF FAILURE TO OBTAIN COURT APPROVAL

If the United States District Court for the District of South Carolina does not approve this Consent Decree or an appellate court reverses the Court's approval of this Consent Decree, it shall become null and void, and the Settling Parties shall be relieved of all obligations, releases, or assignments made under this Consent Decree, and DHEC shall return all monies paid in settlement on behalf of Settling Defendants.

**Consent Decree**
*DHEC v. American Fast Print Limited*
Civil Action No. 6 04 - 23349 - 13
Page 27

XIV.     INTEGRATION OF APPENDICES

This Consent Decree and its Appendices and Exhibits constitute the final, complete and exclusive agreement and understanding among the Settling Parties with respect to the settlement embodied herein. The Settling Parties acknowledge that there are no representations, agreements or understandings relating to the settlement of the matters addressed in this Consent Decree other than those expressly contained herein. The following Appendices are attached to and incorporated into this Agreement:

Appendix A is the Amended Complaint filed by the Department on July 25, 2005.

Appendix B is the Answer to Amended Complaint filed by Defendant American Fast Print on August 19, 2005; Answer to Amended Complaint filed by Defendant Piper Properties on August 25, 2005.

Exhibit 1 is the Scope of Work.

Exhibit 2 is the Notice of CERCLA Lien for American Fast Print Limited (U.S.) and the Notice of CERCLA Lien for Piper Properties of Greenville, LLC

Exhibit 3 is the Escrow Agreement.

Exhibit 4 is the Schedule of American Fast Print Operating Costs.

XV.     COUNTERPARTS

This Consent Decree may be executed in any number of counterparts, each of which shall be deemed an original, but all of which shall constitute one instrument.

XVI.     EFFECTIVE DATE

The effective date of this Consent Decree shall be the date upon which this Court enters this Consent Decree.

**Consent Decree**
*DHEC v. American Fast Print Limited*
Civil Action No. 6 04 - 23349 - 13
Page 28

THE UNDERSIGNED PARTIES enter into this Consent Decree in the case captioned

*South Carolina Department of Health and Environmental Control v. American Fast Print*

*Limited (U.S.)(d/b/a U.S. Finishing)* Civil Action No. 6:04-23349-13, relating to the U.S.

Finishing Site.

FOR THE SOUTH CAROLINA DEPARTMENT
OF HEALTH AND ENVIRONMENTAL CONTROL:

Date: _10-6-06_

C. Earl Hunter, Commissioner
South Carolina Department of Health &
Environmental Control
2600 Bull Street
Columbia, South Carolina 29201

Date: _10/6/2006_

Jacquelyn S. Dickman (Fed. Bar # 536)
Carlisle Roberts, Jr. (Fed. Bar # 4938)
South Carolina Department of Health &
Environmental Control
2600 Bull Street
Columbia, South Carolina 29201

Ben A. Hagood, Jr. (Fed Bar #1409)
Wendy L. Wilkie (Fed Bar # 7346)
Hagood & Kerr, PA
654 Coleman Blvd.
Mt. Pleasant, South Carolina 29464

FOR AMERICAN FAST PRINT LTD. (U.S.):


Date: *8-2-06*

By: _HANA FRYML_

Its: _PRESIDENT_


Date: *8-2-06*

J. Richard Kelly, Esquire (Fed. I.D. No. 2301)
Leatherwood Walker Todd & Mann, PC
Post Office Box 87
Greenville, South Carolina  29607
(864) 240-2466

Eugene C. McCall, Jr., Esquire
McCall Environmental, P.A.
508 Poinsett Highway
Greenville, South Carolina  29609
(864) 370-1550

Attorneys for Defendant American Fast Print
Ltd. (U.S.)


**Consent Decree**
*DHEC v. American Fast Print Limited*
Civil Action No.  6 04 - 23349 - 13
Page 29

FOR DUKE ENERGY CORPORATION
(d/b/a Duke Power):


Date: _8/8/06_

By: _Mitchell C Griggs_

Its: _VP - EHS_


Date:_____

R. Howard Grubbs  (Fed. I.D. No. 2492)
Jennifer Barr  (Fed. I.D. No. 7994)
Michael J. Bogle  (Fed. I.D. No. 9322)
Womble Carlyle Sandridge & Rice, PLLC
550 S. Main Street, Suite 400
P.O. Box 10208
Greenville, South Carolina  29603
(864) 255-5400

Attorneys for Duke Energy Corporation

FOR DUKE ENERGY CORPORATION
(d/b/a Duke Power):


Date:_____


By: _____

Its: _____

Date: 8/6/06    _____

R. Howard Grubbs  (Fed. I.D. No. 2492)
Jennifer Barr  (Fed. I.D. No. 7994)
Michael J. Bogle  (Fed. I.D. No. 9322)
Womble Carlyle Sandridge & Rice, PLLC
550 S. Main Street, Suite 400
P.O. Box 10208
Greenville, South Carolina  29603
(864) 255-5400

Attorneys for Duke Energy Corporation

FOR PIPER PROPERTIES OF GREENVILLE, LLC:

Date: _Aug. 3, 06_

Piper Properties of Greenville, LLC

By: _____

Its: _____

Date: _Aug. 3, 2006_

_____

Jack D. Griffeth (Fed. I.D. No. 2643)
Ross B. Plyler, Esquire (Fed. I.D. No. 9409)
Love Thornton Arnold & Thomason, PA
Post Office Box 10045
Greenville, South Carolina  29603
864-242-6360 - main
864-271-7972 - fax

Attorneys for Piper Properties

**Consent Decree**
*DHEC v. American Fast Print Limited*
Civil Action No.  6 04 - 23349 - 13
Page 32

I. FINAL JUDGMENT

Pursuant to Rule 54(b) of the Federal Rules of Civil Procedure, the Court finds that there is no just reason for delay and directs that this Consent Decree be entered forthwith as a final judgment with respect to all claims and causes of action asserted by the Plaintiff South Carolina Department of Health and Environmental Control against Defendants American Fast Print Limited (U.S.) (d/b/a U.S. Finishing); Duke Energy Corporation (d/b/a Duke Power); and Piper Properties of Greenville, LLC.

AND IT IS SO ORDERED this _____1_____ day of _____November_____, 2006.

G. Ross Anderson, Jr.
UNITED STATES DISTRICT JUDGE